FARMERS STATE BANK, a corporation, Appellant, v. W. J. RICHTER, Respondent.

(189 N. W. 242.)

**Banks — and banking — bank's purchase of stock in electric company to enable bank to procure electric lights held not an "investment in stock of other corporations" in violation of statute.**

1.  Where the cashier of a banking institution at the direction of the directors thereof, subscribed for stock in another corporation, an electric light company, and who at their direction placed $500 in the bank to the

credit of the electric company, which was checked out by it, and where it further appears that the purchase of the stock in the electric company was for the purpose of enabling the bank to procure electric light in the bank, it is *held* that such purchase was not a violation of § 5187 C. L., as amended by chap. 54 of the Session Laws of 1915, prohibiting banking institutions from investing in the stock of other corporations.

Opinion filed July 8, 1922.

An appeal from a judgment of the District court of Dickey county, and from an order denying the motion for judgment notwithstanding the verdict or in the alternative for a new trial, *McKenna*, J.

Order and judgment affirmed.

*F. J. Graham,* for appellant.

The doctrine of ultra vires, by which a contract made by a corporation beyond the scope of its corporate powers is unlawful and void, and will not support an action rests, as this court has often recognized and affirmed, upon three distinct grounds : The obligation of anyone contracting with a corporation to take notice of the legal limits of its powers; the interest of the stockholders not to be subject to risks which they have never undertaken, and, above all, the interest of the public that the corporation shall not transcend the powers conferred upon it by law. North Star Boot & Shoe Co. v. Stebbins, (S. D.) 48 N. W. 833.

"Cashier of bank must act within scope of power authorized by directors. Cashier cannot contract for purchase of merchandise for bank." Des Moines Mfg. Co. v. Milling Co. (S. D.) 70 N. W. 839.

"Officers are not bound by contracts unauthoriezd by directors." Bank of Commerce v. Hart, (Nebr.) 55 N. W. 631; Morse on Banks and Banking, 2nd ed. p. 155.

"The general manager of a corporation may bind it within the scope of its corporate business but not in excess of its powers. (Iowa) 126 N. W. 190."

"A corporation cannot ratify a contract which it had not the power to make." 82 N. W. 13.

"It is a general rule that a corporation may ratify any act or contract which it might lawfully have done or made originally." 110 N. W. 715.

"The powers of a corporation are strictly limited to those granted by

their charter or by the statute under which they are organized." 13 Minn. 59.

"The directors of the bank could not legally ratify that which they had no power to authorize." 10 Cyc. 787. 10 Cyc. 787-919; § 7986, 7987, C. L. 1913; Thom. Corp. Vol. 5; §§ 5482, 5877; 2 Thom. Corp. 2nd ed. § 1768.

"The president of a corporation is liable for its torts, fraud and conversion. 2 Thom. Corp. 2nd ed. §§ 1489, 1490, 1765; Corpus Juris 14 a, §§ 1869, 1873, 1922, 2508, 2514, 2533.

*E. E. Cassels,* and *W. S. Lauder,* for respondent.

*The act complained of is not within the prohibition of chap. 54, Laws 1915.*

This statute says that a bank shall not "employ or invest" its funds in the stock of any other corporation.

The word "invest" means "to lay out money in some permanent form so as to produce an income." Bouvier Law Dictionary. People v. Feitner, 67 N. Y. Supp. 893.

"To lay out money or capital in business with the view of obtaining an income or profit." Webster Dictionary. San Diego County Bank v. Barrett, 126 Cal. 413, 58 Pac. 914.

"Investment means the loaning or putting out of money at interest so as to produce an income. State v. Bartley, 41 Neb. 277, 59 N. W. 907.

GRACE, J. This appeal is from a judgment and from an order denying the motion for judgment notwithstanding the verdict, or in the alternative for a new trial. The action is one for the recovery of damages in the sum of $500 against the defendant, while acting as plaintiff's cashier, on the theory that he had wrongfully paid out that sum. The trial was had to the court and jury. The verdict was in defendant's favor.

The defendant was the owner of 69 out of 150 shares of the bank. The Forbes Electric Company was a corporation organized to erect and maintain electric connecting wires between the Ellendale electric plant and Forbes, and for the organization and maintenance of an electric light system in Forbes. The electric plant in Forbes had been destroyed by fire, so that there remained no lighting system therein. The plaintiff was

interested in having this electric system constructed, so that it might have light in its banking institution. A subscription list to the stock of the Forbes Electric Company was drafted, wherein was described the purposes of its organization. Those desiring to obtain stock were required to sign this list, specifying the number of shares of $100 each for which they subscribed. The defendant was directed by the president and a majority of the board of directors to subscribe for five shares of stock. He did so, subscribing for four shares at one time, and one share at another. His direction to subscribe for such stock was not given or authorized at any regular or special meeting of the board of directors of the bank. On July 22, 1919, the defendant, as cashier of plaintiff, placed in the bank to the credit of the Forbest Electric Company the sum of $500 in payment of the five shares of stock. On the same date he made out a memorandum note for that amount, payable to the plaintiff and signed the name of the Forbes Electric Company to it, by W. J. Richter, cashier. On the face of the note he made the notation, "For bank."

The defendant was a director, as well as the cashier, of the bank. The certificate of the five shares of stock was issued August 18, 1920, to A. S. Marshall, the president and a stockholder of the bank. The defendant, during a portion of the time prior to the time the stock was issued, was secretary of the Forbes Electric Company. With the exception of one share which was not one of the five paid for by the money of the bank, he issued no shares during the time he was secretary. It is unnecessary to set forth the pleadings to any greater extent than is necessary to present a clear understanding of the issues. The substance of the complaint is to the effect that defendant as cashier, invested $500 in the stock above mentioned and wrongfully misappropriated and paid out that sum of the cash assets of the bank; that, to conceal the misappropriation and wrongful payment, he prepared and placed among the assets of the bank to represent the amount so misappropriated the memorandum note above mentioned. The $500 deposited by the cashier and credited to the electric company was checked out by that company. It is sought in this action to be recovered of defendant on the theory that it was paid out in violation of chap. 54 of the Session Laws of 1915. This chapter prohibits, as therein specified, banks from applying their money or assets directly or indirectly in trade or commerce, or the investment thereof in the stock of any corporation, bank, partnership, firm, or association, or in produce or other commodities, except as advances for grain, or produce in store or

in transit to market, except that a bank may invest sufficient of its funds in the stock of the Federal Reserve Bank of the district in which it is situated to enable it to become a member of the Federal Reserve Association.

The answer, after making certain admissions relative to the corporate character of the plaintiff interposed a general denial of the allegations of the complaint. · It further shows that the acts of the defendant were authorized by the officers, directors, and stockholders of the bank for the purpose of securing electric lights and electrical conveniences in  and about their banking institution in the village of Forbes; that said bank placed in its place of business electric lights and other electrical appliances such as are needed; that all of the conveniences which induced the plaintiff, its officers, directors, and stockholders, to subscribe the $500 to the electric company, have been complied with; that plaintiff is now using such electrical conveniences and receiving the benefits thereof.

There is abundant evidence to support the verdict of the jury. The evidence fully establishes the fact that the $500 expenditure was not contemplated by the officers and directors of the bank, nor by this defendant, as an "investment," as that term is commonly understood, in the stock of the electric company. It does in reality show that all that was contemplated by the expenditure was to assist in producing  a  means whereby the electric light might be installed in the bank. The only conclusion that reasonably can be arrived at from a study of the evidence is that the $500 was expended as an incidental and necessary expense to the conduct of the business of the bank, and this with the same authority that it might have installed any fixture or incurred any other incidental expense for the purpose of facilitating the carrying on of its· business. This bank had a capital stock of $15,000. Under § 5151, C. L. 1913, it could invest 35 per cent. of its capital stock and unimpaired surplus in a banking house, furniture, fixtures, and the parcel of land on which the banking house is located. Certainly it would seem that the electrical appliances necessary to furnish light through the bank might properly be denominated fixtures such as were necessary in carrying on the business. In any event, the expenditure could be denominated nothing less than an ordinary incidental expense, which it would be idle to contend the directors did not have right and authority to incur, equally as much perhaps as though the expenditure had been one for fuel or for janitor service.

The evidence clearly shows that the directors did authorize the de-

fendant to expend the $500 in the manner hereinbefore stated, but it does not show that such authority was given at any regular or special meeting of the board. They in effect, however, made him their agent to do exactly what he did do. No one is complaining of what the cashier did in this respect, except the directors, who authorized it. Certainly it would seem that the directors of the bank are estopped from any recovery in this action by reason of their conduct; certainly they should not lead or direct the cashier into making the expenditure, then be permitted to mulct him in damages for doing what they directed him to do; certainly if any one should be liable for this misappropriation of the funds in the circumstances here, it would not be the cashier. Looking through the form of the investment to its substance, it is clear that it was merely an expense item. The case as a whole on the part of the plaintiffs is highly technical, and especially so in view of the fact that defendant acted in the highest of good faith, under direction and authority, in a matter which was in reality an expenditure, and not an investment, and from which the defendant did not receive one penny of profit.

The appellant has assigned a vast number of errors, 99 in all. Substantially 86 of them, however, are based upon alleged error of the court in the admission of certain evidence over plaintiff's objection, or in the exclusion of evidence offered. A careful examination has been made of all these, and the conclusion is that none of them constitute prejudicial or reversible error. Several assignments of error are based upon alleged errors in the instructions given by the court. These have been examined critically, and the conclusion reached that there is no reversible error in any of them. The court in its instructions fully recognized the law as set forth in chap. 54 of the Session Laws of 1915, an amendment of § 5187, C. L. 1913, and fully instructed the jury that, if they found the investment was in violation of that law, they should return a verdict for the plaintiff for $500 and interest.

It, however, instructed the jury, thus:

"I charge you that it is a question of fact for you to determine from all of the evidence in this case, and the law as I am giving it to you in these instructions, as to whether or not the defendant, with the knowledge, consent, or approval of a majority of the board of directors of the plaintiff bank, in the summer of 1919, paid to the Forbes Electric Company the sum of $500 as an investment in the stock of the said electric company, or whether it was paid to the said electric company as

a contribution or as an item of expense in the legitimate and reasonable carrying on of the banking business."

"As I charged you heretofore, if you find from the evidence that the defendant, either with or without the approval of the board of directors, paid the said money to the Forbes Electric Company, for the purpose of an investment in the stock of said company, then and in that case, your verdict must be for the plaintiff for the full amount sued for."

"On the other hand, if you believe from the evidence that said money was not paid to the Forbes Electric Company for the purpose of investing in the stock of the said company, but was in good faith with the knowledge and consent of a majority of the board of directors as expenses or a contribution, merely for the purpose of securing electric lights for the plaintiff bank for the lighting of its building and premises· and to enable the bank to carry on its business more easily or expeditiously or comfortably, then I charge you it is a question of fact for you to determine from all the facts and circumstances in this case whether or not such outlay of $500 was reasonable, under all the circumstances surrounding the defendant as cashier and director, and around the other directors and around the plaintiff bank itself, at the time such expenditure was made, as to whether or not such expense was reasonable and proper under all the circumstances, as disclosed to you by the evidence."

It would seem unnecessary to add any comments to these quotations of the instructions. They both express the law fairly and clearly and at the same time point out to the jury the crucial facts necessary to be determined by them under the evidence and the law as given them by the court. It can be said of the instructions as a whole that they are a fair and sufficient statement of the law of the case. There is no part of them which can be fairly said to be the basis of error. We are clear there is no reversible error in them; if anything, those parts of the instructions complained of were too favorable to plaintiff.

The court did not err in refusing to direct a verdict in plaintiff's favor at the close of all the evidence.

The order and judgment appealed from are affirmed. Respondent is entitled to his costs and disbursements on appeal.

BIRDZELL, C. J., and ROBINSON, CHRISTIANSON, and BRONSON, JJ., concur.